UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RONNIE THORNTON,

      Petitioner,

v.                                  CASE NO. 6:06-cv-1623-Orl-31UAM

JAMES MCDONOUGH, et al.,

      Respondents.

_____

## **ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 8).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a timely response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 13). Petitioner filed a reply to the response (Doc. No. 18).

Petitioner alleges four claims for relief in his habeas petition: (1) his Sixth and Fourteenth Amendment rights were violated by the trial court's denial of his motion for continuance; (2) his Sixth and Fourteenth Amendment rights were violated by the trial court's denial of his motion to dismiss defense counsel; (3) his Fourteenth Amendment right to direct appeal was violated because the state appellate court *per curiam* affirmed his conviction and sentence and stated that he did not have any grounds for appeal; and (4) trial counsel rendered ineffective assistance by failing to (a) investigate and call an eyewitness to testify, (b) move for or support the *ore tenus* motion for a

continuance in order to obtain a witness for trial, (c) correctly advise Petitioner about his right to testify, and (d) object to aggravating statements made by the trial court.

## I.      *Procedural History*

Petitioner was charged by information with one count of delivery of cocaine.  A jury trial was conducted, and the jury found Petitioner guilty as charged.  The trial court sentenced Petitioner to a ten-year term of imprisonment to be followed by five years of probation.  After the denial of his *pro se* motion for new trial, Petitioner filed a direct appeal, and the Fifth District Court of Appeal of Florida *per curiam* affirmed on May 11, 2004.  *See Thornton v. State*, 874 So. 2d 595 (Fla. 5th DCA 2004).

On August 1, 2005, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.  The state trial court denied relief on February 24, 2006. Petitioner appealed, and the appellate court *per curiam* affirmed.  *See Thornton v. State*, 929 So. 2d 1079 (Fla. 5th DCA 2006).  Petitioner filed a motion for rehearing, which was denied.

## II.     *Legal Standard*

When a claim has been denied by the state court on the merits, 28 U.S.C. § 2254(d) guides the Court's consideration of the claim.  Section 2254(d) provides as follows:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001),

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id*.  A determination of a factual issue made by a state court shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## III.    *Analysis*

### A.    *Claim One*

Petitioner asserts that his Sixth and Fourteenth Amendment rights were violated by the trial court's denial of his motion for continuance.  Petitioner sought a continuance of his trial because he wished to call his co-defendant, Ronnie Peterson, to testify that he was innocent; however, defense counsel had not subpoenaed the co-defendant.  Petitioner raised the denial of the continuance on appeal, and the appellate court denied relief.        After the venire was selected, Petitioner indicated that he wanted another lawyer.  *See* App. I at 56.  In the course of the trial court's inquiry, Petitioner stated that he wanted to call his co-defendant as a witness and wanted to continue the trial

in order to do so. *Id.* at 58. The trial court noted that Peterson had pled guilty based on the facts set forth in the charging affidavit, which provided that Petitioner was involved in the drug transaction. *Id.* at 58-59. The trial court subsequently denied the motion to discharge Petitioner's attorney and the motion to continue, concluding that the motion to continue was made too late and was insufficient. *Id.* at 60.

Pursuant to Florida law, "the denial of a motion for continuance is [within] the sound discretion of the trial judge[,]" *Lebron v. State*, 799 So. 2d 997, 1018 (Fla. 2001), and "will only be reversed when an abuse of discretion is shown." *Israel v. State*, 837 So. 2d 381, 388 (Fla. 2002). To establish an abuse of discretion, the defendant must show that the trial court's ruling resulted in undue prejudice to the defendant. *Id.*

In the instant action, Petitioner maintains that he did not deliver cocaine to Peterson, but instead only approached the vehicle in which Peterson and an undercover officer were transacting a drug sale in order to warn Peterson that the other person in the vehicle was an officer. *See* Doc. No. 18 at 45-46. Petitioner argues that Peterson would have testified that Petitioner is innocent, as evidenced by Peterson's affidavit, wherein he states that Petitioner did not have anything to do with the drug transaction. Doc. No. 18-2 at 15-17.

Contrary to Petitioner's assertions, at trial Agent Lisa Green testified that Petitioner approached the vehicle in which she and Peterson were sitting. Agent Green handed Peterson a one-hundred dollar bill, and he in turn gave it to Petitioner. Agent Green saw Petitioner pull-out a cocaine-like substance and give it to Peterson, who then gave the substance to her. Other undercover officers, who were monitoring the drug buy, moved in to arrest Peterson and Petitioner. Petitioner

fled on foot and officers lost sight of him for a brief period, but apprehended him a short distance from the incident. *See* App. B at 17-35.

Therefore, even if the trial court had granted a continuance so that Petitioner could call Peterson to testify, the jury heard evidence in direct conflict to Peterson's purported testimony. Moreover, as noted by the trial court, prior to Petitioner's trial, Peterson pled guilty to the facts in the charging affidavit, which implicated Petitioner. Thus, Peterson would have been impeached by his prior inconsistent statement had he testified. Petitioner has not demonstrated that the trial court abused its discretion in denying the motion for continuance. Accordingly, this claim is denied.[1]

### B.    *Claim Two*

Petitioner contends that his Sixth and Fourteenth Amendment rights were violated by the trial court's denial of his motion to dismiss defense counsel. In support of this claim, Petitioner contends that the state trial court failed to conduct a hearing pursuant to *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973), and *Faretta v. California*, 422 U.S. 806 (1975),[2] after he moved to dismiss his attorney. Petitioner raised this claim on direct appeal, and the appellate court *per curiam* affirmed. *See* App. J at 14-18; App. L.

To the extent that Petitioner contends that the state court erred in denying his motion to discharge his attorney by failing to conduct a *Nelson* hearing, this claim is a state law claim. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since

---

[1]The Court notes that in the state court Petitioner did not raise this claim as a violation of his Sixth and Fourteenth Amendment rights. Thus, the claim is seemingly procedurally barred. However, Respondents failed to assert that the procedural bar.

[2]*Faretta*, 422 U.S. at 819-21 (holding that a defendant has a constitutional right to waive his right to counsel).

5

no question of a constitutional nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Llamas-Almaguer v. Wainwright*, 666 F.2d 191 (5th Cir. 1982). Therefore, the Court will not consider this portion of the claim.

To the extent Petitioner asserts that the denial of the motion to dismiss his attorney violated his federal constitutional rights, the Eleventh Circuit has stated, "[b]efore a court allows a criminal defendant to proceed *pro se*, the defendant must clearly and unequivocally assert his right of self-representation." *Nelson v. Alabama*, 292 F. 3d 1291, 1295 (11th Cir. 2002) (citing *Faretta*, 422 U.S. at 835); *see also Buhl v. Cooksey*, 233 F.3d 783, 792 (3rd Cir. 2000) (noting that "a defendant's request of self-representation in a criminal trial must be made clearly and unequivocally."); *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (noting that "[o]nly after the voluntary waiver of the constitutional right to counsel by assertion of the right to self-representation does it become incumbent upon the trial court to ascertain that the defendant 'knowingly and intelligently' has relinquished the benefits of counsel.").

In the instant case, the record reveals that after the venire was assembled, Petitioner told his attorney, who informed the trial court, that he wanted another lawyer. *See* App. I at 56. The trial court inquired as to whether Petitioner had retained another lawyer and why he wanted another lawyer. *Id.* Petitioner indicated that he did not believe his attorney had discussed any trial strategy with him and had failed to sever his case from his co-defendant's. *Id.* at 56-57. The trial court noted that the case had been severed, and Petitioner's co-defendant had pled guilty. *Id.* at 57. Petitioner stated that he wanted to call Peterson as a witness and wanted to continue the trial in order to do so. *Id.* at 58. In response to Petitioner's statements, trial counsel told the trial court that he had met with Petitioner twice to discuss his case and potential defenses and that the first time Petitioner ever

6

mentioned calling Peterson to testify was that morning.  *Id.* at 59-60.  The trial court denied the motion to discharge Petitioner's attorney, concluding that the motion was not timely raised as the trial proceedings had already started.  *Id.* at 60.

At no time did Petitioner state, or imply, that he wanted to represent himself.  As such, a *Faretta* hearing was not warranted pursuant to federal law.  Accordingly, the Court concludes that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, federal law.

### C.      Claim Three

Petitioner asserts that his Fourteenth Amendment right to direct appeal was violated because the state appellate court *per curiam* affirmed his conviction and sentence and determined that he did not have any grounds for appeal.  Respondents assert that this claim is procedurally barred because Petitioner failed to raise it in the state courts.

The federal court must dismiss those claims or portions of claims that either (1) have been explicitly ruled procedurally barred by the highest state court considering the claims,[3] or (2) are not exhausted but would clearly be barred if returned to state court.[4]  Thus, "[f]ederal courts are

---

[3]*Harris v. Reed*, 489 U.S. 255 (1989).

[4]*See, e.g., Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991) ("[w]hen a claim is never presented to the state court *Teague* does not require that the last state court rendering judgment 'clearly and expressly' state that

precluded from addressing claims that have been held to be procedurally defaulted under state law. In addition, the federal courts may not address claims that have not been presented in the state court if the state court would have found the claims to be procedurally defaulted . . . ." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).[5]

In the instant case, the record reveals that claim three was never raised in the state courts. Because the claim was not raised and is clearly barred from being raised in the state courts, it appears to be procedurally barred from consideration by this Court.

There are two exceptions to the procedural default bar. First, a petitioner may overcome a procedural default by showing "both 'cause' for the default and actual 'prejudice' resulting from the default." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). The second exception, known as the "fundamental miscarriage of justice," only "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* In the present case, Petitioner has neither alleged nor shown either cause or prejudice that would excuse the default. Petitioner has alleged, however, the applicability of the fundamental miscarriage of justice exception, *i.e.,* that he is actually innocent.

Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). To establish actual innocence, the petitioner must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). In addition, "'[t]o be credible,' a claim of

its judgment rests on a procedural bar.").

[5]Also, if the petitioner attempts to raise the claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.), *cert. denied*, 513 U.S. 1061 (1994).

8

actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324). "Evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Adams v. Gillis*, 2003 WL 21904386, *3 (E.D. Pa. 2003) (citing *Schlup*, 513 U.S. at 328).

In the instant case, Petitioner maintains that he is actually innocent of delivery of cocaine. As noted *supra*, Petitioner asserts that he did not deliver cocaine to his co-defendant, but instead only approached the vehicle in which his co-defendant and an undercover officer were transacting a drug sale in order to warn his co-defendant that the other person in the vehicle was an officer. *See* Doc. No. 18 at 45-46. In support of his argument, Petitioner filed his own affidavit and an affidavit completed by his co-defendant, wherein Peterson attested that Petitioner did not have anything to do with the drug transaction. Doc. No. 18-2 at 15-17.

As an initial matter, the Court notes that none of Petitioner's evidence is new. Instead, it is clear from the record that at the time of Petitioner's trial, he maintained his innocence and knew of his co-defendant's allegations. *See* App. I at 58-60. Furthermore, this evidence does not establish that Petitioner is factually innocent. As noted *supra*, the evidence presented at trial was overwhelming. Officers observed Petitioner deliver drugs to his co-defendant and take money in return. *See* App. B at 17-35. Moreover, had Peterson actually testified, he would have been impeached, because he "pled guilty to the facts stated in the officer's affidavit[,]" which provided that Peterson got a substance from Petitioner and then delivered it to the officer for money. App. I at 58. Thus, Petitioner has not presented new, reliable evidence establishing that he is actually innocent. Accordingly, claim three is procedurally barred.

9

**D.      Claim Four**

Petitioner asserts that trial counsel rendered ineffective assistance by failing to (a) investigate

and call an eyewitness to testify; (b) move for or support the *ore tenus* motion for a continuance in

order to obtain a witness for trial; (c) correctly advise Petitioner about his right to testify; and (d)

object to aggravating statements made by the trial court.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief on the

ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was

deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient

performance prejudiced the defense.[6] *Id*. at 687-88.  A court must adhere to a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-

90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945

(1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of

counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even
> what most good lawyers would have done. We ask only whether some reasonable

---

[6]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> lawyer at the trial could have acted, in the circumstances, as defense counsel acted
> at trial. Courts also should at the start presume effectiveness and should always avoid
> second guessing with the benefit of hindsight. *Strickland* encourages reviewing
> courts to allow lawyers broad discretion to represent their clients by pursuing their
> own strategy. We are not interested in grading lawyers' performances; we are
> interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted), *cert. denied*, 514

U.S. 1131 (1995).  Under those rules and presumptions, "the cases in which habeas petitioners can

properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers*

*v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

>    A.    *Failure to Investigate and Call an Eyewitness to Testify*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to investigate

and interview Peterson and for failing to call him to testify.  As noted *supra*, Petitioner maintains

that Peterson would have testified that Petitioner did not have anything to do with the drug

transaction.

Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court

denied relief.  *See* App. Q at 2-4.  The state court cited *Strickland* as the test for considering a claim

of ineffective assistance of counsel.  In denying the claim, the state court reasoned that at trial when

Petitioner raised the issue of Peterson testifying, trial counsel indicated that Petitioner had not

notified him that he wanted Peterson to testify until that morning despite the fact that they had

discussed potential defenses in the case.  *Id.* at 3 (citing Trial Tr. at 6-7).  The state court further

noted that Peterson had pled guilty to the offense based on the facts contained in the charging

affidavit, thereby implicating Petitioner.  *Id.* (citing Trial Tr. at 5-6).

11

Petitioner has failed to establish that the state court's determination is either contrary to, or an unreasonable application of, federal law.  As noted *supra*, even if Peterson had testified that Petitioner was innocent, Peterson had previously pled guilty to the offense and implicated Petitioner. Thus, Peterson's testimony would have been subject to impeachment.  Moreover, officers testified that they observed Petitioner (1) approach the vehicle in which Peterson and an undercover officer were located, (2) take money from Peterson, (3) give Peterson a cocaine-like substance in return, and (4) flee from the scene.  Thus, Petitioner has not established that he was prejudiced by trial counsel's alleged failure to investigate, interview, or subpoena Peterson to testify.  Accordingly, this claim is denied pursuant to § 2254(d).

B.  *Failure to Move for or Support the Ore Tenus Motion for a Continuance in Order to Obtain a Witness to Testify*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to move for a continuance prior to trial or to support his *ore tenus* motion for a continuance.  Petitioner maintains that counsel's failure to do so denied him of his right to call Peterson to testify.

Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court denied relief.  *See* App. Q at 4.  The state court denied this claim finding that Petitioner's request to call Peterson to testify was untimely.  *Id.*

This Court finds that Petitioner has not established that trial counsel was ineffective for failing to request a continuance prior to trial or for failing to support Petitioner's *ore tenus* motion for a continuance.  When Petitioner sought a continuance in order to obtain Peterson to testify, trial counsel told the trial court that Petitioner had not informed him that he wanted Peterson to testify until after the trial started.  Moreover, even if counsel's performance was deficient for failing to

12

request a continuance, Petitioner has not established that he was prejudiced.  Peterson's testimony would have been subject to impeachment based on his guilty plea, and other testimony from the officers contradicted Peterson's purported testimony.  Accordingly, this claim is denied.

      C.     *Failure to Correctly Advise Petitioner about His Right to Testify*

Petitioner contends that trial counsel rendered ineffective assistance by misadvising him about his right to testify.  In support of this argument, Petitioner asserts that counsel  advised him that if he testified then the prosecution would be able to question him about his history of selling drugs and his possession of drugs.  Petitioner maintains that he would have testified had he known that the prosecution would not have been allowed to ask him about the specific nature of his convictions unless he was untruthful about the number of his convictions.  Specifically,  Petitioner would have testified that he did not deliver cocaine to Peterson, but instead only approached the vehicle in which Peterson and an undercover officer were transacting a drug sale in order to warn him that the other person in the vehicle was an officer.  *See* Doc. No. 18 at 45-46.

Petitioner raised this claim in his Rule 3.850 motion, and the state postconviction court denied relief.  *See* App. Q at 4-6.  The state court determined that Petitioner had not established that he was prejudiced by trial counsel's alleged misadvise because even if he had testified, the officers' testimony was more credible and would have contradicted Petitioner's testimony.  *Id.* at 6.

Petitioner has not established that the state court's determination is either contrary to, or an unreasonable application of, federal law.  The record reflects that Petitioner had seven felony convictions and a conviction for petit theft, a crime which involves dishonesty.  *See* App. A at 23. Had Petitioner testified, the prosecution would have been allowed to ask him how many convictions he had; and had Petitioner lied, the prosecution could have questioned him about the nature of the

13

convictions. *See* § 90.610, Fla. Stat.; *see also Fotopoulos v. State*, 608 So. 2d 784 (Fla. 1992).

Moreover, officers testified that Petitioner gave Peterson drugs in return for money and then fled

when they attempted to arrest him.  In sum, the state court's determination that no prejudice was

established is not unreasonable; and this claim is denied pursuant to §2254(d).

> D.     *Failure to Object to Aggravating Statements Made by Trial Court Resulting in a Vindictive Sentence*

Petitioner asserts that trial counsel rendered ineffective assistance of counsel by failing to

object to the trial court's statements made in response to Petitioner's question regarding his sentence.

Petitioner argues that the trial court's statements establish that his ten-year sentence is vindictive

based on his co-defendant's sentence of three years.  In support of this claim, Petitioner notes that

after the trial court sentenced him to ten years of imprisonment, he questioned the trial court about

why he got ten years to which the court responded:

> Well, Mr. Peterson had taken the more provable but less responsible action and got three years, and I think ten years is more appropriate in your case.  His was a result of a plea bargain again, based on his prior record.  Your prior record, in my judgment, calls for that amount of time.

(App. B at 85.)

Petitioner raised this claim in his Rule 3.850 motion.  The state postconviction court denied

relief finding that Petitioner did not "provide any details showing, or even attempting to show, why

the [trial court's] statement was invalid or prejudicial" and failed to explain "how the lack of [trial

counsel's] objection prejudiced him."  (App. Q at 9.)

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the United States Supreme  Court held

that it is "patently unconstitutional" to penalize criminal defendants who successfully have a criminal

conviction set aside on appeal by imposing a harsher sentence after retrial.  *Id.* at 724.  As a

14

prophylactic measure "to assure the absence of such a motivation," the *Pearce* Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" on the record. *Id.* at 726.

*Pearce* was overruled in part by *Alabama v. Smith*, 490 U.S. 794 (1989). In *Smith*, the United States Supreme Court held that the *Pearce* presumption of vindictiveness does not arise "when the first sentence was based upon a guilty plea, and the second [harsher] sentence follows a trial." *Id.* at 796. In *Smith*, the Court explained that the *Pearce* presumption is appropriate only in circumstances "in which there is a 'reasonable likelihood' that the increase is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Id.* at 799 (citations omitted). Importantly, the *Smith* Court held that there is no reasonable likelihood of vindictiveness where a defendant is given a harsher sentence "after trial than was imposed after a prior guilty plea" because "the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after trial." *Id.* at 801 (noting that vindictiveness cannot be presumed "[e]ven when the same judge imposes both sentences").       The United States Supreme Court has not held that the *Pearce* presumption of judicial vindictiveness applies to circumstances like those presented here – where the defendant rejects a plea offer and goes to trial. Indeed, the majority of federal Circuit Courts, including the Eleventh Circuit, have held that the *Pearce* presumption has no application in the plea bargaining context. *Hitchcock v. Wainwright*, 770 F.2d 1514 (11th Cir. 1985) (holding the *Pearce* presumption inapplicable in the plea bargaining context), *reversed on other grounds*, *Hitchcock v. Dugger*, 481 U.S. 393 (1987); *see also*, *United States v. Morrison*, 153 F.3d 34 (2d Cir. 1998) (holding *Pearce* presumption to be inapplicable

where defendant received a harsher sentence after withdrawing his guilty plea and proceeding to trial); *Waring v. Delo*, 7 F.3d 753 (8th Cir. 1993) (same); *United States v. Taglia*, 925 F.3d 1031 (7th Cir. 1991) (holding *Pearce* presumption inapplicable where the defendant received a harsher sentence on remand after successfully moving to vacate a guilty plea); *United States v. Lippert*, 740 F.2d 457 (6th Cir. 1984) (rejecting automatic application of the *Pearce* presumption in the context of plea agreements); *Frank v. Blackburn*, 646 F.2d 873 (5th Cir. 1980) (holding the *Pearce* presumption inapplicable in light of Supreme Court precedent that the government is free to encourage guilty pleas by offering substantial benefits and threatening a defendant with more severe punishment).

The record reveals that at sentencing the trial court believed based on the evidence that Petitioner was not only guilty of the offense of delivery of cocaine, but was also the more culpable defendant. (App. B at 81.) The trial court stated that the passing of the cocaine back and forth between parties was an attempt to shield Petitioner from detection, thereby indicating that he was in the business of selling drugs. *Id.* at 81-82. In response to Petitioner's inquiry regarding his sentence, the trial court implicitly reaffirmed that it believed Petitioner to be the more culpable party as evidenced by the statement, "Well, Mr. Peterson had taken the more provable but less responsible action and got three years, and I think ten years is more appropriate in your case." *Id.* at 85. The trial court further indicated that the sentence was based on Petitioner's prior record. *Id.* Thus, the trial court articulated two legitimate reasons for Petitioner's sentence, neither of which related to his decision to go to trial.

The Court concludes that Petitioner has not established that he was prejudiced by trial counsel's failure to object to the trial court's statements regarding his sentence. First, the issue of

the disparity in sentences was raised at sentencing and on direct appeal.  Thus, the appellate court had an opportunity to consider the claim and denied relief.  Second, as noted *supra,* Petitioner has not established that the trial court imposed a vindictive sentence given that the trial court articulated reasons other than Petitioner's decision to proceed to trial for imposing the ten-year sentence. Accordingly, this claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 8, filed November 14, 2006) filed by Ronnie Thornton is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      All pending motions are **DENIED** as moot.

3.      The Clerk of the Court shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 4th day of October, 2007.

Copies to:
sc 10/4
Counsel of Record
Ronnie Thornton

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE